**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
---‑----------------------------------------------------------------------------X
LORENZO ROMAINE,

Plaintiff,

9:21-cv-127 (BKS/ML)

## COMPLAINT
**Plaintiff Demands**
**A Trial By Jury**

-against-

STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,
SUPERINTENDENT THERESA TYNON OF WASHINGTON
CORRECTIONAL FACILITY and CORRECTION OFFICER
BRANDI MARTINEAU,

Defendants.

---------------------------------------------------------------------------------X

Plaintiff, by DEVON M. RADLIN, his attorney, respectfully alleges as follows:

***PRELIMINARY STATEMENT***

1.      This action is brought for compensatory damages, punitive damages and attorney's

fees pursuant to 42 U.S.C. §§1983 and 1988 for violations of his civil rights, as secured by statutes

and the Constitution of the United States.

***JURISDICTION***

2.      This action is brought pursuant to 42 U.S.C. §§ 1983 AND 1988, and the First,

Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

3.      Jurisdiction is found upon 28 U.S.C. §§ 1331 and 1343.

4.      Plaintiff further invokes the pendent jurisdiction of this Court to consider claims

arising under New York State Law.

***VENUE***

5.      Venue is properly laid in the Northern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

### *JURY DEMAND*

6.      Plaintiff respectfully demands a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38(b).

### *PARTIES*

7.      Plaintiff, *LORENZO ROMAINE (ROMAINE),* is and was at all times herein mentioned, a citizen and a resident of the State of New York.

8.      That at all the times herein mentioned, plaintiff *ROMAINE* was incarcerated and housed in defendant *WASHINGTON CORRECTIONAL FACILITY (WCF)* located at 72 Lock Eleven Lane, Comstock, New York 12821.

9.      The *STATE OF NEW YORK*, (STATE) controls the New York State Prison System.

10.     The *NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION* (NYSDOC) is a municipal agency under the supervision and control of the **STATE**.

11.     The defendant, *SUPERINTENDENT THERESA TYNON OF WCF*, (*SUPERINTENDENT*), was and still is employed by the defendants *STATE* and *NYSDOC*, jointly and severally, as the Superintendent for WCF.

12.     The defendant, *CORRECTION OFFICER BRANDI MARTINEAU (C.O. MARTINEAU),* was a Correction Officer employed by the defendants *SUPERINTENDENT, STATE* and *NYSDOC,* jointly and severally.

2

13. That at all times herein mentioned, defendant *SUPERINTENDENT,* employed by defendants *STATE* and *NYSDOC*, in the capacity of Superintendent, was acting in such capacity as an agent, servant and employee of the defendants *STATE* and *NYSDOC,* jointly and severally, and she is sued individually and in her official capacity.

14. That at all times herein mentioned, defendant *SUPERINTENDENT* is the Superintendent of **WCF** and as such, she is the commanding officer of all defendant *STATE* and *NYSDOC,* jointly and severally, Correctional personnel at **WCF**, and is responsible for their training, supervision and conduct. She has responsibility within defendant *NYSDOC* for overseeing the day-to-day operations of **WCF** and is responsible for ensuring that inmates incarcerated in **WCF** are protected from rape, sexual assault, sexual harassment and other violence and that correctional personnel adhere to Federal and State law, as well as official defendant *NYSDOC* policy.

15. That at all the times herein mentioned, defendant *SUPERINTENDENT,* was acting under color of state law and under his authority as Superintendent for the defendants *STATE* and *NYSDOC,* jointly and severally,

16. That at all times herein mentioned, defendant *C.O. MARTINEAU,* employed by the defendants *SUPERINTENDENT, STATE* and *NYSDOC,* jointly and severally, in the capacity of correction officer, and was acting in such capacity as an agent, servant and employee of the defendants *SUPERINTENDENT, STATE* and *NYSDOC,* jointly and severally, and she is sued individually and in her official capacity.

17. That at all the times herein mentioned, defendant *C.O. MARTINEAU,* was acting under color of state law and under her authority as a correction officers for the defendants *STATE* and *NYSDOC,* jointly and severally,

3

18.    Defendants, *STATE, NYSDOC, SUPERINTENDENT* and *C.O. MARTINEAU,* jointly and severally, are responsible for overseeing, *inter alia,* the Security Operations Department and thus are aware of the dangers facing inmates, specifically with female correction officers in complete male correctional facilities, and thus are aware of the serious incidents involving inmates with staffing and operations, policies and procedures and compliance.

19.    That at all times herein mentioned, the defendant *SUPERINTENDENT* was responsible for making and enforcing the policies of defendant *NYSDOC* and was acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York. Defendant *NYSDOC*, through its senior officials, promulgates and implements policies, including but not limited to policies with respect to the use, reporting and investigation of force or abuse by uniformed staff, the rights and privileges of visitors of defendant *NYSDOC* facilities, and the rights of inmates. The practice of using unconstitutional force, rape and sexually assaulting and harassing inmates at defendant *NYSDOC* facilities, and of covering up that unconstitutional force, rape and sexual assault and harassment by fabricating false charges against the victims, at all relevant times was known to and perpetuated, permitted, encouraged and institutionalized by defendant *NYSDOC* supervisors, including high-ranking defendant *NYSDOC* personnel. Because of the practice of using unconstitutional force, rape, sexual assault, sexual harassment and making false charges against victims, and of discriminating against inmates, has been widespread, longstanding, and deeply embedded in defendant *NYSDOC* culture, it constitutes an unwritten municipal policy or custom of the State of New York. The defendant *NYSDOC* is also responsible for the appointment, training, supervision and conduct of all defendant *NYSDOC* personnel, including the individual named Defendant.

4

20.     Defendants *STATE, NYSDOC* and *SUPERINTENDENT,* jointly and severally, were aware and had actual notice of defendant *C.O. MARTINEAU's* dangerous propensities to commit sex crimes and assaults against male inmates.

21.     Defendants *STATE* and *NYSDOC,* jointly and severally, transferred defendant *C.O. MARTINEAU* from Greene Correctional Facility (**GCF**) to **WCF** due to a sexual incident between defendant *C.O. MARTINEAU* and another inmate at **GCF**.

## PEOPLE IN NEW YORK STATE CUSTODY

22.     At all times herein mentioned, Defendants, jointly and severally, were aware that inmates, like Plaintiff, are vulnerable to sexual abuse, rape, sexual harassment and other violence while incarcerated in defendant *NYSDOC* facilities and that there is a heightened risk that they will be sexually or physically assaulted.

23.     At all times herein mentioned, Defendants, jointly and severally, were aware of the Prison Rape Elimination Act (**PREA**).

24.     As part of **PREA**, Congress established the bipartisan National Prison Rape Elimination Commission (**NPREC**) to investigate the problem of sexual abuse of persons in government custody and to propose standards to eliminate such sexual abuse. Those final standards became effective June 20, 2012 being published in the Federal Register (28 C.F.R. Part 115).

25.     **NPREC** released a report and recommended national standards, finding the following: "Sexual abuse is not an inevitable feature of incarceration. Leadership matters because corrections administrators can create a culture within facilities that promotes safety instead of one that tolerates abuse...Research on sexual abuse in correctional facilities consistently documents the vulnerability of men and women with non-heterosexual orientations and transgender

individuals... full adoption of the PREA Standards by all of the nation's prisons and jails is necessary to achieve the elimination of sexual abuse in confinement facilities."

26.     At all times herein mentioned, defendants were aware that inmates are vulnerable because the information is readily available on the internet, newspapers, magazines, books, movies, television and radio, correctional education courses and in publications of various Correctional Associations; including but not limited to, the Department of Justice, the National Institute of Corrections and the American Jail Association.

## PATTERN, POLICY AND PRACTICE OF RAPE, SEXUAL ABUSE AND HARASSMENT OF INMATES IN THE CUSTODY OF NEW YORK STATE'S CORRECTIONAL SYSTEM

27.     For the past two (2) decades the defendant *STATE*, its senior supervisors and correction officers have been repeatedly litigated against for implementing and condoning excessive force, rape, sexual abuse and sexual harassment at their defendant *NYSDOC* facilities, specifically *WCF*, failing to investigate those violations, covering up those violations and bringing false charges against the victims in an effort to mask the misconduct of the officers involved in this unconstitutional conduct.

28.     Inmates are targets for rape, sexual harassment, sexual and physical abuse inside of the State of New York's correctional system.

29.     The violence, deprivation of civil rights and cover-up that occurred in this case are not isolated events.

30.     These violations are a manifestation of a pattern and practice of misconduct of which New York State policymakers have had actual and constructive notice and yet there has not been any implemented practices and policies to avoid these violations.

31.    Federal regulations pursuant to **PREA**, which took effect in 2012, specifically require municipal correctional facilities, such as **WCF**, to train their employees, "how to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex or gender nonconforming inmates." 28 C.F.R. 115.31(a)(9).

32.    Through defendant *NYSDOC* elaborate reporting system, the Superintendent and their staff were aware of a pattern of a large number of incidents involving rape, sexual harassment and sexual abuse of inmates, resulting in serious psychological and physical injuries to inmates and failed to take sufficient and necessary steps and intervention to curb these abuses.

33.    Defendants *NYSDOC* and *SUPERINTENDENT,* jointly and severally, their staff have also been made aware of the failure of the defendant *NYSDOC* to bring disciplinary charges against its correction officers to promote institutional reform, punish staff who abuse inmates, and discourage others from doing so.

34.    Though all these cases and defendant *NYSDOC* reports, the defendant *SUPERINTENDENT* and their staff have been made aware of the widespread practice by correctional staff to sexually harass, rape, abuse and assault inmates. They have also been made aware of the failures of the NYSDCCS Investigation Division to adequately investigate allegations of sexual harassment, rape, abuse and assault, a practice that causes further abuse.

35.    These Superintendents and their staff, specifically defendant *SUPERINTENDENT*, cannot credibly contend that they are unaware of such abuse that occurs with regularity in the New York State correctional system and the failure of the defendants *STATE* and *NYSDOC,* jointly and severally, to take sufficient measures to investigate and discipline correctional staff for this abuse.

7

36.     There is a pattern, practice and policy pursuant within the defendant *NYSDOC* to which inmates are sexually assaulted, raped and harassed when in the custody and control of defendant *NYSDOC.*

## FACTS

37.     From February 10, 2018 to April 18, 2018, Plaintiff was incarcerated at the correctional facility known as Washington Correctional Facility located at 72 Lock Eleven Lane, Comstock, New York (WCF).

38.     From February 10, 2018 to April 18, 2018, defendant *C.O. MARTINEAU* was assigned to Housing Dorm C2, B2 and the Package Room.

39.     From February 10, 2018 to April 18, 2018, Plaintiff was sexually harassed, assaulted and raped by defendant *C.O. MARTINEAU.*

40.     From February 10, 2018 to April 18, 2018, during the 7AM – 3 PM Tour, while Plaintiff was in Dorm C-2 of WCF, Defendant *C.O. MARTINEAU* approached Plaintiff and demanded that he have sexual intercourse with her. Plaintiff continuously refused.

41.     Defendant *C.O. MARTINEAU* threatened Plaintiff.

42.     From February 10, 2018 to April 18, 2018, Defendant *C.O. MARTINEAU* raped Plaintiff multiple times.

43.     From February 10, 2018 to April 18, 2018, Plaintiff was in fear of his life and safety due to Defendant *C.O. MARTINEAU's* threats and sexual assaults.

44.     Defendant *C.O. MARTINEAU* threatened Plaintiff that she would tell NYSDCCS superiors that Plaintiff tried to sexually assault her, file a weapons charge against him, or have Plaintiff transferred to different facility if Plaintiff did not have sexual relations with her.

8

45.      Defendant *C.O. MARTINEAU* said, in sum and substance to plaintiff, "I will put you in the Box with new charges"; "You will never go home"; "You are mine forever"; "I can make your life a living hell here"; to force Plaintiff to engage in sexual relations with her.

46.      Plaintiff continuously begged defendant *C.O. MARTINEAU* to stop engaging with him and to leave him alone.

47.      Defendant *C.O. MARTINEAU* ordered claimant to perform sexual acts on her person and forced herself on claimant on multiple occasions from February 10, 2018 to April 18, 2018.

48.      Defendant *C.O. MARTINEAU* forced Plaintiff to place her phone numbers on her call list; specifically, (518) 294-5083 and (518) 538-3263.

49.      Plaintiff told Defendant *C.O. MARTINEAU* that he did not want to place Defendant *C.O. MARTINEAU's* phone numbers on his call list.

50.      Defendant *C.O. MARTINEAU* threatened Plaintiff that she would have him charged with sexual assault and weapons charges if he refused to put her number(s) on his call list.

51.      Out of fear, Plaintiff complied with Defendant *C.O. MARTINEAU's* demands.

52.      Defendant *C.O. MARTINEAU* continually threatened to have Plaintiff charged with sexual assault or weapons charges if he did not do as she asked.

53.      Defendant *C.O. MARTINEAU* continually told Plaintiff that no one would believe that he was the victim.

54.      Defendant *C.O. MARTINEAU* gave Plaintiff naked photographs of herself.

55.      Plaintiff told Defendant *C.O. MARTINEAU* that he did not want her photographs.

56.      Defendant *C.O. MARTINEAU* threatened that she would make sure that he never left the WCF if he did not accept her photographs.

57.    Defendant *C.O. MARTINEAU* told Plaintiff that she knew about his children because she looked through his personal property while he was out of the Housing Area during a personal visit.

58.    Defendant *C.O. MARTINEAU* threatened the safety of Plaintiff's children if he did not continue to engage in sexual relations with her.

59.    Plaintiff did not consent to the sexual relations with Defendant *C.O. MARTINEAU.*

60.    On April 18, 2018, Plaintiff presented himself to the Infirmary of WCF and requested to speak to Sergeant FNU Northrup.

61.    Plaintiff told Sergeant FNU Northrup of the above sexual assaults committed against him by Defendant *C.O. MARTINEAU.*

62.    Plaintiff was transferred from WCF to Albany Medical Center for medical treatment.

63.    On or about April 19, 2018, while Plaintiff was incarcerated at Mohawk C.F., Internal Affairs Agents John Doe 1 and John Doe 2 visited Plaintiff and informed him that their investigation substantiated his allegations against Defendant *C.O. MARTINEAU* and that Defendant *C.O. MARTINEAU* was terminated from her employment and would no longer be a threat to Plaintiff.

64.    From February 10, 2018 to date, the sexual assaults, harassment and rape against Plaintiff by Defendant *C.O. MARTINEAU* has caused Plaintiff to suffer from sexual assault, rape, fear, anxiety, post traumatic syndrome (PTSD), medication(s), depression and psychological and physical injuries.

10

65.    Defendants, *STATE, NYSDOC* and *SUPERINTENDENT,* jointly and severally, were on actual and constructive notice of the conduct described in the complaint was on going, persisted and continues to persist to date.

66.    The defendants, *STATE, NYSDOC, SUPERINTENDENT* and *C.O. MARTINEAU,* jointly and severally, committed the following acts:

a)    Refused to aid and safeguard plaintiff from sexual assault and rape having been given actual and constructive notice of defendant *C.O. MARTINEAU'S* dangerous propensities to commit such crimes against male inmates.

b)    Created and maintained an unsafe and dangerous environment for the plaintiff by permitting sexual assaults and rape against inmates.

c)    Covered-up the actions of each other.

d)    Knowingly, intentionally and maliciously harassed, taunted, intimidated and caused the plaintiff to be sexually assaulted and raped.

e)    Knowingly and intentionally violated the plaintiff's rights as guaranteed to him by the constitutions of the United States and New York, as well as, Federal and State case law.

f)    The actions of the defendants **C.O. MARTINEAU** constituted Cruel and Unusual Punishment in violation of plaintiff's Eighth (8th) Amendment Rights when the sole purpose of the defendant's actions was to harass, injure, humiliate and intimidate plaintiff.

g)    The actions of each defendant were malicious and sadistic.

h)    Failed to monitor said illegal activity in the jail, specifically sexual assault and rape against male inmates.

11

## FIRST CAUSE OF ACTION

*(Forth Amendment – Excessive Force and Unlawful Seizure)*

67.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

68.     Defendant *C.O. MARTINEAU* used and sexually abused and assaulted plaintiff for her own personal sexual gratification and perverse goals.

69.     Defendant *C.O. MARTINEAU* assaulted plaintiff in a sexual and aggressive manner, propositioned plaintiff into sexual encounters and threatened that she would press criminal charges against him, refuse him visits from family and friends, send him to the Box, make his life hell or keep him at **WCF** if he didn't do as she ordered him.

70.     Defendant *C.O. MARTINEAU* preyed on Plaintiff.

71.     Defendant *C.O. MARTINEAU* would approach Plaintiff in his Housing Dorm, Package Room and other open locations and demand him to come with her to secluded areas to subject him to sexual assault and rape.

72.     Defendant *C.O. MARTINEAU's* actions with Plaintiff were open and obvious to defendant *STATE* and *NYSDOC* staff.

73.     Defendant *C.O. MARTINEAU* raped and sexually assaulted Plaintiff continuously from February 10, 2018 to April 18, 2018.

74.     Defendant *C.O. MARTINEAU* had the intent to abuse Plaintiff because she took measures to ensure that plaintiff would comply with her demands and would demand Plaintiff to secluded areas of **WCF** to engage in sexual activity as she desired.

75.     Defendant *C.O. MARTINEAU* was serious and served no penological, lawful or governmental purpose and was done solely to gratify her perverse sexual desires and to dominate and abuse plaintiff with her powers as a penal custodian.

76.     Defendant *C.O. MARTINEAU's* conduct was "repugnant to the conscience of mankind" and caused plaintiff to suffer serious physical, psychological and emotional injuries.

77.     Plaintiff has been seriously traumatized from said abuse. Plaintiff has had difficulty sleeping, emotionally unbalanced and continues to have lack of trust in authoritative figures. These sexual assaults and rapes against Plaintiff have led to broken relationships, both current and for the future.

78.     As a result of the foregoing, Plaintiff's right to be free from excessive force and unreasonable seizure under the Fourth (4th) Amendment was violated and he has suffered and continues to suffer from serious physical and psychological injuries.

## SECOND CAUSE OF ACTION

*(Fourteenth Amendment – Substantive Due Process)*

79.     Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

80.     Defendants conduct herein was an abuse of executive power so clearly unjustified by any legitimate objective of governmental enforcement as to be barred by the Fourteenth (14th) Amendment. The actions by Defendants, specifically Defendant *C.O. MATINEAU*, deprived plaintiff of his substantive Due Process rights under the Fourteenth Amendment.

81.     Plaintiff had a constitutionally protected right in his liberty interests and bodily integrity.

82.    Defendants' conduct deprived plaintiff of his dignity and stripped him of his liberty interest as afforded by the Due Process Clause of the Fourteenth (14th) Amendment.

83.    Plaintiff was fearful for his life and safety, psychologically traumatized due to the threats of defendant *C.O. MARTINEAU.*

84.    Plaintiff was not able to consent to any of the actions against him due to his being an inmate.

85.    Plaintiff was unable to restrain the conduct against him, specifically the actions of *C.O. MARTINEAU.*

86.    As a result of the foregoing, Plaintiff was deprived of his liberty interests and right to substantive due process, causing severe and permanent physical, psychological and emotional injuries.

## THIRD CAUSE OF ACTION

### *(First Amendment – Retaliation)*

87.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

88.    At the time of the incidents described in this Complaint, Plaintiff was an inmate.

89.    Plaintiff did not want to have sexual contact with defendant *C.O. MARTINEAU.*

90.    Plaintiff told defendant *C.O. MARTINEAU* that he did not want to engage in such conduct. defendant *C.O. MARTINEAU* would immediately threaten Plaintiff; including but not limited to, refusing him family visits; pressing criminal charges against him; filing infraction against him; making his life "hell" at **WCF**; ensuring that plaintiff would never leave **WCF**.

14

91.    When Plaintiff informed defendant *C.O. MARTINEAU* that he did not want to engage in sexual conduct with her, defendant *C.O. MARTINEAU* retaliated against him. Defendant *C.O. MARTINEAU* stated that she would falsify reports that plaintiff sexually assaulted her and stated that no one would believe Plaintiff because he was a criminal and an inmate. Defendant *C.O. MARTINEAU* also informed Plaintiff that she would testify against him to discredit any complaint and/or grievances he filed against her as to the sexual conduct.

92.    Plaintiff wanted to report defendant *C.O. MARTINEAU* but was in fear of his safety and life.

93.    Plaintiff engaged in constitutionally protected conduct.

94.    Defendant *C.O. MARTINEAU* retaliated against plaintiff for engaging in protected conduct.

95.    As a result, Plaintiffs First Amendment right was violated, and he suffered injuries.

**FOURTH CAUSE OF ACTION**

*(Denial of Equal Protection – Gender Based Discrimination)*

96.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

97.    Plaintiff was an inmate at **WCF.**

98.    Plaintiff was repeatedly raped and sexually assaulted between February 10, 2018 and April 18, 2018 by defendant *C.O. MARTINEAU.*

99.    Plaintiff was discriminated against because he made multiple attempts to refuse sexual conduct with defendant *C.O. MARTINEAU.*

100.    Plaintiff had and has substantive rights to his bodily integrity.

101.    Defendants, *STATE, NYSDOC, SUPERINTENDENT* and *C.O. MARTINEAU,* jointly and severally, denied plaintiff the Equal Protection of the Law under the Fourteenth (14th) Amendment because of his gender.

102.    As a result, Plaintiff suffered psychological and physical injuries.

## FIFTH CAUSE OF ACTION

### *(Monell)*

103.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

104.    Plaintiff seeks to hold the defendants *STATE* and *NYSDOC,* jointly and severally, liable under the theory of Municipal Liability. The Defendant *STATE's* failure to enact a policy or to turn a blind-eye to the existence of a policy and custom, the defendant *STATE's* deliberate indifference to the training of its employees, the lack of supervision and the failure to enact safeguards or a complaint procedure was the causal connection that violated plaintiff's constitutional rights. The policy, practice or custom outlined here were not formally adopted but had the effect of being one.

a.    **Existence of a Policy and Custom**

The policy complained of here was pronounced or tacit and reflected in either action or inaction.

(i)    Defendant *C.O. MARTINEAU* had keys to rooms and access to the entire **WCF** facility. Defendant *C.O. MARTINEAU* had a sexual relationship with at least one (1) other inmate in addition to plaintiff. Defendant *C.O. MARTINEAU* was allowed to continue employment after her sexual encounter with another inmate at

16

another facility (Greene C.F.). Defendant *C.O. MARTINEAU,* rather than terminated, was transferred to **WCF** from Greene C.F. after her prior sexual encounter(s) with another male inmate. Defendant *C.O. MARTINEAU* was not disciplined for her conduct. Defendant *C.O. MARTINEAU's* behavior towards Plaintiff, specifically her targeting him for sexual conduct, was open and obvious to defendants, *STATE, NYSDOC* and *SUPERINTENDENT,* jointly and severally, and their personnel, but nothing was done to further prevent or stop said violations against Plaintiff by defendant *C.O. MARTINEAU.*

(ii)    **WCF** is a medium security level correctional facility. Employees at **WCF** made numerous complaints to their superiors about defendant *C.O. MARTINEAU's* inappropriate and criminal conduct with male inmates. Defendant *C.O. MARTINEAU's* misconduct was reported to supervisors at Greene C.F. and **WCF**, but she was never disciplined. On many occasions, Defendant *C.O. MARTINEAU* would threaten Plaintiff that if he ever stated that he didn't want to engage in this sexual conduct with her, that no one would believe him because he is a criminal and an inmate. There were no policies in place to prevent an individual like Defendant *C.O. MARTINEAU* to be separate and alone from male inmates without supervision or video monitoring to prevent nefarious and criminal activities between staff and male inmates from taking place.

(iii)    Defendant *SUPERINTENDENT* was/is a Superintendent at **WCF.** During the period of February 10, 2018 to April 18, 2018, defendant *SUPERINTENDENT* was fully aware of the misconduct taking place at **WCF** but failed to take any action. Defendant *SUPERINTENDENT* received reports from other defendant

*NYSDOC* correctional personnel who witnessed Defendant *C.O. MARTINEAU's* conduct between herself and Plaintiff. Defendant *SUPERINTENDENT* did nothing.

(iv)    Defendant *C.O. MARTINEAU* was employed by defendants *STATE, NYSDOC* and *SUPERINTENDENT,* jointly and severally, at all times relevant to the allegations in this Complaint. Defendant *C.O. MARTINEAU* sexually assaulted and raped Plaintiff between February 10, 2018 and April 18, 2018.

(v)    Defendant *SUPERINTENDENT* was aware of the situation at **WCF** but failed to do anything to further prevent or stop the condition(s). When defendant *NYSDOC* employees would come to defendant *SUPERINTENDENT* and voice concerns, she refused to take any actions.

(vi)    Defendant *C.O. MARTINEAU* previously had problems at Greene C.F. and was transferred to **WCF** due to said problems. Nevertheless, she was transferred to **WCF** and was left unsupervised to continue the same conduct she was transferred for committing; specifically, sexual conduct between herself and male inmates. Defendants *STATE, NYSDOC* and *SUPERINTENDENT,* jointly and severally, conduct of ignoring misconduct continued at **WCF**. She would ignore improper conduct and never disciplined defendant *C.O. MARTINEAU.*

(vii)    Defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, were aware of this widespread custom outlined in the foregoing and failed to take any corrective action and resulted in a *defacto* policy that the misconduct could be tolerated, otherwise swept under the rug or ignored.

The foregoing policy and custom by the defendants **STATE, NYSDOC** and **SUPERINTEDENT,** jointly and severally, employees became an ongoing problem and regular course of business at **WCF** which led to the constitutional violations and deprivations of plaintiff.

b.    **Failure to Train**

(i)    The conduct outlined in this complaint constituted a pattern and custom that has existed at **WCF** for more than a decade.

(ii)    The long-term knowledge of numerous allegations of employee misconduct and/or indiscretions put defendants **STATE, NYSDOC** and **SUPERINTEDENT,** jointly and severally, on notice of the conditions at **WCF.**

(iii)    Despite the long-term knowledge of numerous allegations of employee misconduct and/or discretions, defendants **STATE, NYSDOC** and **SUPERINTEDENT,** jointly and severally, failed to implement training procedures for the staff at **WCF** to ensure that the employees were adequately equipped to deal with situations (as outlined in the complaint) in a lawful and proper manner.

(iv)    The only training that was provided to the staff at **WCF** during the time plaintiff and other male inmates were being sexually exploited was in form of how to physically "restrain" inmates. There was no formal training on prohibiting, identifying and reporting sexual conduct with inmates. Nor were there any training instructions or manuals on "non-touching," fraternizing between opposite sex inmates or on what to do in the event an employee observed any sexual misconduct.

(v)    Defendants **STATE, NYSDOC** and **SUPERINTEDENT,** jointly and severally, failed to offer any training to the **WCF** staff about how to interact with male

19

inmates who have troubled and vulnerable backgrounds and how to not exploit those vulnerabilities.

(vi)    Given the known frequency of the staff on inmate assaults and indiscretions taking place between **WCF** staff with male inmates, defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, should have had some form of training in place for the employees to handle a situation involving sexual and predatory conduct by **WCF** staff upon inmates. There was no training about what to do if there were any incidents as alleged in this complaint. Due to the lack of training on the law through employee handbooks, memos, pamphlets, videos, field-training, courses and other training materials, the defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, were and are deliberately indifferent to the "highly predictable consequence," specifically, violations of constitutional rights of individuals like plaintiff.

c.    **Failure to Supervise**

(i)    At all relevant times, Defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, were supervisors.

(ii)    The above-mentioned supervisors had a duty to supervise their subordinates and ensure that nothing nefarious, untoward or unconstitutional behavior or actions were taking place at **WCF.**

(iii)    However, these supervisors turned a blind-eye and failed to remedy said unconstitutional conduct resulting in deprivation and violation of the constitutional rights of plaintiff as alleged in the complaint.

(iv)  The above stated gross negligence and indifference by the supervisors at **WCF** created an atmosphere that permitted malfeasance amongst employees, low morale for conscientious employees and engendered an area where wrongdoers got away unpunished and the conscientious employees and vulnerable inmates were either punished or suffered further retaliation.

(v)  The supervisors' deliberate indifference in supervising their employees resulted in violation of plaintiff's constitutional rights and he suffered physical and psychological injuries.

d.  **Failure to Enact Safeguards or a Formal Complaint Procedure**

(i)  Defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, lack of implementation of a complaint/grievance procedure when such implementation had been clearly warranted, and an utter disregard to the Constitution, the defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, were deliberately indifferent to the rights of individuals like Plaintiff.

(ii)  Defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, are and were aware that an employee at **WCF** would encounter situations such as those described in this complaint and would be forced to make difficult decisions as to whether to report the incident or to turn a blind eye to the misconduct. Despite having said knowledge and notice, defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, were deliberately indifferent in failing to set measures into place to avoid wrongful choice/conduct by the employee that would lead to the violation of the constitutional rights of individuals like plaintiff resulting in a *de facto* policy with the full force of the law and the defendants

21

*STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, incorrectly assume that their employees would exercise common sense even though they were not trained to confront and adequately address these specific types of misconduct.

(iii)    Defendant *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, has failed to take any action to have training in place for their employees, such as defendant *C.O. MARTINEAU*, as to how to handle situations as outlined in this complaint. This lack of action and formal training by the defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, has led their employees to be ill-equipped to adequately address the conditions faced by plaintiff and other inmates similarly situated and thus resulting in constitutional violations.

(iv)    The inadequacy or lack of training by the defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, for its **WCF** employees has directly caused the constitutional violations and injuries to plaintiff.

(v)    In addition, defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, failure to enact a complaint procedure for inmates and innocent employees (who had not engaged in said conduct) that would hold wrongdoers accountable for their actions or inactions, caused individuals, like plaintiff, to be physically, mentally and sexually abused by defendants employees who turn a blind eye to the unlawful and despicable conduct. The incidents complained of by plaintiff are not isolated incidents, but a pattern and custom that is widespread at **WCF.**

(vi)    This lack of accountability further empowers individuals like defendants to continue to engage in unlawful conduct knowing that they would walk away with

22

impunity while at the same time causing constitutional injuries to individuals like plaintiff.

(viii)    Defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, should have been aware that prisoner abuse in its prison system is rampant and male inmates are among the most vulnerable and that there was a need for defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, to set up programs so that inmates have an opportunity to make a complaint against the prison custodians who have power and control over them. However, defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, failed to enact any of such programs or policies and as a result, individuals like plaintiff or innocent employees' complaints were unheard and inmates continued to suffer harm.

105.    Due to defendants *STATE, NYSDOC* and *SUPERINTEDENT,* jointly and severally, policies, the custom and practice or the lack of the defendants *STATE* and *NYSDOC,* jointly and severally, to implement (a) meaningful training materials, (b) adequate disciplinary measures, (c) additional supervision, (d) adequate hiring and retention procedures, (e) complaint/grievance procedure when such implementation has been clearly warranted, and an utter disregard to the Constitution, defendants *STATE* and *NYSDOC,* jointly and severally, have been deliberately indifferent to the rights of its citizens, like plaintiff. The foregoing failure to act or disregard a known occurrence that needed to be rectified, defendants *STATE* and *NYSDOC,* jointly and severally, instead turned a blind-eye to these unconstitutional practices and was the proximate cause of the injuries suffered by plaintiff.

**SIXTH CAUSE OF ACTION**

*(Supervisory Liability)*

106.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

107.    Defendant **SUPERINTENDENT** is and was a supervisor employed by defendants **STATE** and **NYSDOC,** jointly and severally, at all times alleged in the complaint.

108.    Defendant **SUPERINTENDENT** was responsible for the supervision of its Correction Officers, specifically defendant **C.O. MARTINEAU**, at **WCF.**

109.    Defendant **SUPERINTENDENT** and **C.O. MARTINEAU,** jointly and severally, made this unconstitutional behavior, specifically the sexual abuse and rape of inmates like plaintiff, not a secret and responded to said conduct as, "business as usual."

110.    Defendant **SUPERINTENDENT** was aware of the violation of plaintiff's constitutional rights but failed to do anything and therefore participated in violating plaintiff's constitutional rights by being deliberately indifferent to plaintiff's safety, well-being and welfare and by not preventing defendants, specifically defendant **C.O. MARTINEAU,** from preying upon and sexually assaulting and raping inmates, like plaintiff.

111.    Defendant **SUPERINTENDENT** was aware of the serious nature of defendants, specifically defendant **C.O. MARTINEAU,** actions upon plaintiff and other inmates, but failed to take any corrective measures to further prevent and/or stop same.

112.    Defendant **SUPERINTENDENT** failed to intervene or take any remedial actions to prevent the ongoing sexual abuse and assaults on plaintiff after becoming aware that plaintiff and other inmates were being abused and exploited by defendants, specifically defendant **C.O. MARTINEAU,** but was grossly negligent in her supervision.

24

113. Defendant **SUPERINTENDENT** was further deliberately indifferent to plaintiff and other inmates welfare because she failed and refused to punish, reprimand and or terminate employment of defendant **C.O. MARTINEAU** due to her prior misconduct and unlawful behavior or take any remedial steps or preventive measures, and as such, was complicit and condoned the continued sexual abuse and assault of plaintiff and other inmates thus resulting in the prolonging and enhancing of plaintiffs injuries.

114. As a result of the foregoing, defendant **SUPERINTENDENT** is liable under the theory of supervisory liability because her actions or lack thereof caused and continue to cause plaintiff constitutional injuries.

## SEVENTH CAUSE OF ACTION

*(Conspiracy Pursuant to 42 U.S.C. 1983)*

115. Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

116. All the individually named defendants targeted plaintiff and other inmates for the purpose of sexually abusing and exploiting them and in so doing, the defendants conspired with each other to deprive plaintiff and others similarly situated of their civil rights under the Constitution of the United States.

117. The individually named defendants knew that plaintiff and others similarly situated were vulnerable while in custody at **WCF** and that at such times they were susceptible to abuse by defendants, specifically defendant **C.O. MARTINEAU.**

118. The individual defendants used their correctional status to take advantage of plaintiff and others similarly situated by sexually abusing, raping, threatening and terrorizing him.

25

119.    The individual defendants conspired with one another to hide and remain secret each other's misconduct and failed to take any corrective measures or to inform the proper authorities. These defendants reached an explicit and implicit agreement between themselves to keep the constitutional violations described in the complaint a secret.

120.    The individual defendants had a vested interest in the cover-up of their violations and the ensuing conspiracy because they were aware of and had engaged in unlawful conduct and it would subject them to perjury, prosecution, termination from employment and disciplinary action.

121.    The individual defendants joined and agreed with each other by taking retaliatory actions against fellow employees and inmates who would report, observed or refuse to take part in the misconduct.

122.    As a result, plaintiff suffered constitutional injuries.

## EIGHTH CAUSE OF ACTION

### *(Conspiracy Pursuant to 42 U.S.C. 1983)*

123.    Plaintiff repeats and realleges each and every allegation contained in paragraphs numbered "1" through "66" of the complaint, as if the same were set forth more fully and at length herein.

124.    The individual defendants, who are both supervisors and correction officers at **WCF** where plaintiff and other inmates were housed, observed the continuing sexual abuse and assault by the **WCF** staff, specifically defendant *C.O. MARTINEAU,* on plaintiff and other inmates. These defendants, as correction officers, had an affirmative duty to intervene in an effort to protect plaintiff and other inmates from violations of their constitutional rights and physical and psychological injuries.

26

125.    The defendants, jointly and severally, knew of and observed the unlawful conduct described in the Complaint (including sexual abuse, sexual assault, rape and threats) and had an opportunity to intervene during these unlawful and repugnant acts but failed to intervene nor did they notify higher supervisors or authorities about the misconduct. Instead, they turned a blind-eye to the abuse. As a result, plaintiff suffered constitutional injuries.

*WHEREFORE*, plaintiff, *LORENZO ROMAINE* demands judgment as follows:

A.   Award of compensatory damages to plaintiff against the defendants, jointly and severally, in the amount determined by the jury for each cause of action.

B.   Award the costs and expenses of this action to the Plaintiff.

C.   Award reasonable attorneys fees to the Plaintiff under 42 U.S.C. § 1988 and/or any other applicable laws.

D.   Award punitive damages in an amount determined by the jury.

E.   Award such other and further relief as this Court may deep appropriate.

February   , 2021

Law Offices of Devon M. Radlin
Attorney for Plaintiff
LORENZO ROMAINE
112 W 34th Street - 1Bth Fl
New York, New York 10120
Tel No.: (212)406-9200
Email: Devon@LawDMR.com

Index No.:                    Year                    RJI No.:                    Hon:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROMAINE LORENZO,

                                        Plaintiff,

        -against-

STATE OF NEW YORK, NEW YORK STATE
DEPARTMENT OF CORRECTIONS AND COMMUNITY
SUPERVISION, SUPERINTENDENT THERESA TYNON
OF WASHINGTON CORRECTIONAL FACILITY and
CORRECTION OFFICER BRANDI MARTINEAU,

                                        Defendants.

---

COMPLAINT

**DEVON M. RADLIN**
Attorney for Plaintiff
Office & Post Office Address, Telephone
**112 W 34th Street- 18th Floor**
**NEW YORK, N.Y. 10120**
**(212) 406-9200**

---

To:                                        Signature (Rule 130-1.1-a)

_____

Print name beneath                         Attorney(s) for

---

Service of a copy of the within            is hereby admitted.
Dated,

_____

                                           Attorney(s) for

---

Please take notice
⌐ NOTICE OF ENTRY
that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within names court on
⌐ NOTICE OF SETLEMENT
that an order of which the within is a true copy will be presented for settlement to the HON.
one of the judges of the within names court, at                          on
                                           Yours, etc.

To:                                        DEVON M. RADLIN
                                           Attorney for Plaintiff
Attorney(s) for:                           **112 W 34th St, 18th Floor**
                                           **NEW YORK, NY 1012**