UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**LORENZO ROMAINE,**

                            **Plaintiff,**

v.                                                         9:21-CV-0127 (NAM/ML)

**STATE OF NEW YORK, NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION, SUPERINTENDENT THERESA TYNON OF WASHINGTON CORRECTIONAL FACILITY and BRANDI MARTINEAU,**

                            **Defendants.**

---

**APPEARANCES:**

Devon M. Radlin
Law Offices of Devon M. Radlin
112 West 34th Street, 18th Floor
New York, NY 10120
*Attorney for Plaintiff*

Matthew P. Reed
New York State Attorney General's Office
The Capitol
Albany, NY 12224
*Attorney for Defendants State of New York,*
*New York State Department of Corrections and Community Supervision,*
*and Superintendent Theresa Tynon*

Michael S. Martin
Martin, Martin Law Firm
511 Glen Street
Glen Falls, NY 12801
*Attorneys for Defendant Brandi Martineau*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Lorenzo Romaine brings this action against Defendants under 42 U.S.C. § 1983 alleging civil rights claims related to his incarceration at Washington Correctional Facility ("WCF") in Comstock, New York.  (Dkt. No. 1).  Defendants New York State, the New York State Department of Corrections and Community Supervision ("DOCCS"), and Teresa Tynon (collectively the "State Defendants") now move to dismiss the Complaint.  (Dkt. No. 22).  Plaintiff opposes the motion (Dkt. No. 38), and the State Defendants have replied (Dkt. No. 42).  Separately, Plaintiff seeks to complete default judgment against Defendant Brandi Martineau.  (Dkt. No. 32).  Defendant Martineau moves to set aside the Clerk's Entry of Default and to answer the Complaint.  (Dkt. Nos. 35–36).  Plaintiff opposes those requests.  (Dkt. No. 37).

**II.    BACKGROUND**

    **A.  Facts**[1]

Plaintiff was incarcerated at WCF from February 10, 2018 to April 18, 2018.  (Dkt. No. 1, ¶ 37).  During this time, Defendant Martineau was a Corrections Officer at WCF, and Plaintiff alleges that she "sexually harassed, assaulted, and raped" him.  (*Id.*, ¶¶ 38–42).  Plaintiff alleges that Defendant Martineau continuously subjected him to threats and sexual assaults that made him fear for his life and safety.  (*Id.*, ¶¶ 43–53).

Plaintiff claims that the State Defendants "were on actual and constructive notice" that the abuse was ongoing and had "actual and constructive notice" of Defendant Martineau's "dangerous propensities to commit such crimes against male inmates." (*Id.*, ¶¶ 65–66).  Among

---

[1] The facts alleged in the Complaint are assumed to be true for purposes of this decision only.  *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citations omitted).

1

other things, Plaintiff claims that the State Defendants refused to aid and safeguard him from such abuse, created and maintained an unsafe environment, and covered up abuse. (*Id.*, ¶ 66).

On April 18, 2018, Plaintiff went to the Infirmary and reported the alleged sexual assaults. (*Id.*, ¶¶ 60–61). On April 19, 2018, Plaintiff was visited by two Internal Affairs agents and allegedly told that his claims had been substantiated and that Defendant Martineau was terminated from her employment. (*Id.*, ¶ 63). According to Plaintiff, the abuse he suffered has caused him physical and psychological injuries. (*Id.*, ¶ 64).

### B. Prior Proceedings

Plaintiff commenced this action on February 3, 2021. (Dkt. No. 1). On November 5, 2021, the State Defendants moved to dismiss. (Dkt. No. 22). On November 16, 2021, the Court noted that the time for Defendant Martineau to answer or otherwise respond to the Complaint had expired. (Dkt. No. 26). On November 18, 2021, Plaintiff applied for a Clerk's Entry of Default against Defendant Martineau (Dkt. No. 28), which the Clerk granted (Dkt. No. 30). Finally, on January 4, 2022, Defendant Martineau appeared in this action via counsel and moved to set aside the Clerk's Entry of Default. (Dkt. No. 33, 35). The default and dismissal motions are now all fully briefed. On September 1, 2022, the case was reassigned to the undersigned. (Dkt. No. 43).

## III. STANDARDS OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the

2

speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Motion for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminer, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) *see also* Local Rule 55.1. Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b).

"The Court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "The decision whether to enter default judgment is committed to the district court's discretion[.]" *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citation omitted).

### IV. DISCUSSION

Plaintiff asserts eight claims: 1) excessive force and unlawful seizure in violation of the Fourth Amendment, as against Defendant Martineau; 2) deprivation of substantive due process in violation of the Fourteenth Amendment, as against Defendant Martineau; 3) First Amendment retaliation, as against Defendant Martineau; 4) denial of equal protection in violation of the Fourteenth Amendment, as against all Defendants; 5) a claim against Defendants New York State and DOCCS pursuant to *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S.

658 (1978); 6) a supervisory liability claim against Defendant Tynon; and 7) two claims for conspiracy to violate his rights, as against Defendants Tynon and Martineau. (Dkt. No. 1). The Court will first address the State Defendants' motion to dismiss these claims and then turn to the parties' motions regarding default judgment.

### A. Motion to Dismiss

The State Defendants seek dismissal on the basis that Plaintiff fails to state a claim against them. (Dkt. No. 22-1). Specifically, the State Defendants argue that: 1) Plaintiff's claims against the State of New York, DOCCS, and Defendant Tynon in her official capacity are barred by the Eleventh Amendment; 2) Defendant Tynon was not personally involved in any of Plaintiff's allegations; and 3) Plaintiff's Fourth Amendment claim fails as a matter of law. (*Id.*, pp. 5–10). The Court will address each argument in turn.

#### 1) Sovereign Immunity

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "It has long been settled that the reference to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cali. v. Doe*, 519 U.S. 425, 429 (1997) (collecting cases). Thus, under the Eleventh Amendment, the State, including its agents and instrumentalities, is absolutely immune from being sued, unless it consents or federal law provides otherwise. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989)). "It is well-established that New York has not consented to § 1983 suits in federal court . . . and that § 1983 was not intended to override a state's sovereign

immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (Summary Order) (internal citations omitted).  This immunity extends to State officials acting in their official capacities.  *Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.") (citation omitted).

Here, Plaintiff appears to recognize this settled law and does not dispute that sovereign immunity bars his Section 1983 claims against New York State, DOCCS, and Defendant Tynon in her official capacity.  Rather, Plaintiff points out that the Eleventh Amendment does not bar his claims against Defendant Tynon in her individual capacity.  (Dkt. No. 38, p. 3).  Therefore, Plaintiff's Section 1983 claims against New York State, DOCCS, and Defendant Tynon in her official capacity are dismissed with prejudice.

### 2) Personal Involvement

Next, the State Defendants argue that Plaintiff has failed to state a claim against Defendant Tynon because there are no allegations in the Complaint that she was personally involved in any of the alleged constitutional deprivations.  (Dkt. No. 22-1, p. 7).  In response, Plaintiff contends that she has stated a claim based on allegations that Defendant Tynon knew that Defendant Martineu posed a risk to Plaintiff's safety and deliberately disregarded that risk.  (Dkt. No. 38, pp. 7–13).  The State Defendants counter that these allegations are conclusory.  (Dkt. No. 42, p. 4).

The Second Circuit has clarified that there is no special rule for pleading supervisory liability in civil rights cases.  *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citations omitted).  A plaintiff must plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id.* at 618 (quoting *Ashcroft*, 556 U.S. at 676).  In other words, a plaintiff cannot state a claim against a supervisor

5

based merely on the allegation that the supervisor oversaw a person who committed a constitutional violation. *Id.* at 619.

As relevant here, to state a claim under the Eighth Amendment under the theory that a supervisor failed to prevent harm, the plaintiff must plead both: 1) "conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health"; and 2) that the defendant acted with "deliberate indifference" to that risk. *Id.* (citation omitted). Deliberate indifference means that the defendant must "both be aware of facts from the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citation omitted).

In this case, Plaintiff's allegations of sexual abuse by Defendant Martineau are more than enough to plead that he was exposed to an unreasonable risk of serious harm. However, there are no *specific* allegations in the Complaint that Defendant Tynon knew about this risk and disregarded it. Plaintiff alleges that Defendant Tynon was aware of "serious incidents" involving sexual abuse of inmates by corrections officers. (Dkt. No. 1, ¶¶ 18, 32, 34). But Plaintiff does not specify any particular incidents that were known to Defendant Tynon. Similarly, Plaintiff alleges that Defendant Tynon had "actual notice" of Defendant Martineau's "dangerous propensities to commit sex crimes and assaults against male inmates." (*Id.*, ¶ 20). But Plaintiff does not specify *how* Defendant Tynon was put on notice. While it may be difficult for Plaintiff to fully delineate Defendant Tynon's state of mind at this stage, he must plead more than speculation and legal conclusions. In sum, Plaintiff's allegations are insufficient to plausibly allege an Eighth Amendment violation against Defendant Tynon.

### 3) Fourth Amendment Claim

Further, the State Defendants argue that Plaintiff was a convicted prison at the time of the allegations in the Complaint, and therefore, his claims of excessive force that rely upon the Fourth Amendment fail as a matter of law. (Dkt. No. 22-1, p. 10). Plaintiff appears to concede this point, instead arguing that he has stated a claim under the Eighth Amendment. (Dkt. No. 38, p. 11). It is well-settled that the Fourth Amendment prohibits the use of excessive force by a police officer during a "seizure" of a free citizen. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). In contrast, the Eighth Amendment prohibits cruel and unusual punishment for incarcerated persons. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Here, the allegations in the Complaint sprinkle in references to both the Fourth and Eighth Amendments. (Dkt. No. 1) But Plaintiff's claim for excessive force premised on alleged sexual abuse and assault by Defendant Martineau during his incarceration is only cognizable under the Eighth Amendment. To the extent he alleges a Fourth Amendment claim, it is hereby dismissed.

### 4) Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court finds that it would be futile for Plaintiff to seek to amend his claims against the State of New York, DOCCS, and Defendant Tynon in her official capacity, as they are barred by sovereign immunity. Likewise, it would be futile for Plaintiff to try another Fourth Amendment claim. However, the Court will give Plaintiff leave to amend his claim against Defendant Tynon in her individual capacity, as it may be possible for him to add more specific allegations regarding her personal involvement.

7

### B. Motions as to Default Judgment

The Clerk of the Court previously entered default against Defendant Martineau on November 22, 2021. (Dkt. No. 30). Now Plaintiff seeks to complete the process by moving the Court for default judgment. (Dkt. No. 32). However, Defendant Martineau has responded by moving to set aside the entry of default. (Dkt. No. 35). In order to prevail on her motion, Defendant Martineau must show good cause. Fed. R. Civ. P. 55(c). And in deciding whether that burden is met, courts generally consider: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (citations omitted).

In this case, Defendant Martineau has submitted an affidavit attesting that she "made diligent efforts to retain counsel on this matter and provide a timely answer" to the Complaint, but her efforts "were repeatedly frustrated by COVID-19 exposures and quarantines." (Dkt. No. 35, ¶¶ 6–7, 9–12). She also claims that she was delayed due to the demands of her employment and being a single mother of four children. (*Id.*, ¶ 8). In response, Plaintiff argues that Defendant Martineau has not demonstrated good cause, that she does not have a meritorious defense, and that Plaintiff will suffer prejudice if the default is vacated. (Dkt. No. 37).

After careful review of the record, the Court finds good cause to set aside the Clerk's entry of default. First, although Defendant Martineau could certainly have been more diligent, the Court will credit her excuses and explanations for not appearing in this action sooner. Thus, the Court finds that her default was not willful. Second, the Court finds that any prejudice to Plaintiff is minimal, as this case has effectively been on pause since the State Defendants moved to dismiss. Third, while it is unclear if Defendant Martineau has a meritorious defense, at this stage all such doubts must be resolved in favor of the defaulting party. *Enron Oil Corp.*, 10 F.3d

at 95–96.  Finally, the allegations against Defendant Martineau are very serious, and there is a strong interest in resolving them on the merits.  *Id.*

Accordingly, the Court will vacate the Clerk's entry of default and grant Defendant Martineau's motion for leave to file an answer to the Complaint.  The Court will also deny as moot Plaintiff's motion for default judgment.

## V.    CONCLUSION

For these reasons, it is

**ORDERED** that the State Defendants' Motion to Dismiss (Dkt. No. 22) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claims against New York State, DOCCS, and Defendant Tynon in her official capacity are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's Fourth Amendment claim is **DISMISSED with prejudice;** and it is further

**ORDERED** that Plaintiff's claims against Defendant Tynon in her individual capacity are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff is permitted to amend his claims against Defendant Tynon in her individual capacity by filing an Amended Complaint, as limited by the Court's decision, within 60 days of the date of this Order; and it is further

**ORDERED** that Plaintiff's Motion for Default Judgment (Dkt. No. 32) is **DENIED**; and it is further

**ORDERED** that Defendant Martineau's Motion to Set Aside Default (Dkt. No. 35) is **GRANTED;** and it is further

**ORDERED** that the Clerk's Entry of Default (Dkt. No. 30) is **VACATED**; and it is further

**ORDERED** that Defendant Martineau's Motion for Leave to file an Answer to the Complaint (Dkt. No. 36) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to docket as Defendant Martineau's Answer to the Complaint the document located at Dkt. No. 36, pp. 9–12; and it is further

**ORDERED** that Plaintiff's remaining claims are against Defendant Martineau, in her individual capacity, under the First, Eighth, and Fourteenth Amendments only; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

September 14, 2022
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge